Burt Rosenblatt, AZ Bar No.  014023
**ELY BETTINI ULMAN & ROSENBLATT**
3200 N. Central Avenue, Ste. 1930
Phoenix, Arizona 85012
Telephone (602) 230-2144
Facsimile (602) 264-9337
burt@eburlaw.com

In association with:

Rajeev K. Mittal, CA Bar No. 293463*
**WATERS KRAUS & PAUL**
222 N. Pacific Coast Highway, Suite 1900
El Segundo, CA 90245
Telephone (310) 414-8146
Fax (310) 414-8156
*Admitted Pro Hac Vice*

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Joanne Victoria Encisco**, et al. | No. CV-18-08214-PCT-JJT |
| Plaintiff, | |
| vs. | **JOINT [PROPOSED]** |
| **3M Company**, et al. | **CASE MANAGEMENT PLAN** |
| Defendants. | |

Pursuant to the Court's Order Setting Rule 16 Scheduling Conference and Rule 26(f) of the Federal Rules of Civil Procedure (FRCP), Plaintiff JoAnn Victoria Encisco (Plaintiff) and Defendants, jointly, submit the following Joint Proposed Case Management Plan.  The Joint Proposed Case Management Plan is submitted following the conference of counsel required by FRCP 26(f) and in anticipation of the Rule 16 Case Management Conference scheduled before this Court on November 27, 2018 at 9:30 am.

The deadline for Responses to Mandatory Initial Discovery ("MID") established by General Order 17-08, including the obligation to seasonably supplement remain in full force and effect. The deadlines established in this Order in no way supersede the obligation to make MID required by General Order 17-08. Any party that has not made MID must do so by **close of business, November 19, 2018**.

1. **Nature of the Case:**

    A. **Plaintiff's Claims and Legal Bases Therefor**:

Plaintiff JoAnn Victoria Encsico brings this action under A.R.S. § 12-611, et. seq. of Arizona's Wrongful Death Act in a representative capacity for and on behalf of herself and surviving beneficiaries for all damages allowable under the statute.

Plaintiff alleges that her Decedent, Emmanuel Encisco, Jr. ("Mr. Encisco") was exposed to asbestos through his work (both for pay and in his personal life) with and around asbestos-containing products manufactured, distributed, and/or supplied by Defendants. Plaintiff asserts theories of negligence, products liability, gross negligence, negligence per se, conspiracy, aiding and abetting, and loss of consortium. All theories of liability are premised upon the similar underlying facts that Defendants' asbestos-containing products were unreasonably dangerous and despite foreknowledge of the hazards of such products, Defendants failed to warn Mr. Encisco of those hazards. Mr. Encisco's exposure to these products was the proximate cause of his malignant mesothelioma, a disease that is known to be caused by asbestos exposure, which caused his death.

Plaintiff further alleges that Defendants' actions were willful, intentional, reckless, malicious and characterized by an evil mind thereby warranting the assessment of punitive damages.

Mr. Encisco was a Navy veteran, carpenter and pipelayer who was diagnosed with malignant mesothelioma on or about June 27, 2017 and passed away from that disease less than one year later on May 8, 2018. He resided in Cottonwood, Arizona at the time of his diagnosis and death. He left behind four children: Plaintiff JoAnn Encisco, Emmanuel Encisco, III, Josie

Hammond, and David Encisco.

Mr. Encisco, also known as "Manny," served in the United States Navy from 1956 to 1959.  He completed basic training in San Diego in 1956, and after a brief leave was assigned to the USS Burton Island (AG-88) (Ice Breaker) for a tour in Alaska.  He was then reassigned in approximately 1958 to the USS Passumpsic (AO-17), a tanker.  He was stationed on the Passumpsic until his discharge in 1959.

Aboard the Burton Island, he was a member of the "deck force," and his job duties required that he perform maintenance on all areas of the ship. Aboard the Passumpsic, he worked on deck force for about a year and as a cook for the brief remainder of his time on board until his discharge in 1959.   His deck force duties required him to perform maintenance in all areas of the ship.  His duties as a cook required him to visit, albeit rarely, the boiler rooms directly below the kitchen to deliver food to workers in the boiler and engine rooms while they worked.  This Naval work exposed Mr. Encisco to asbestos from asbestos-containing equipment for which Defendants are responsible.

After the Navy, Manny returned home to the Flagstaff area, married his wife, Mary, and began working various jobs in the Flagstaff area, including: miller at Southwest Lumber from 1959 to 1965; munition operator at the Navajo Army Depot from 1965 to 1973; owner of his own bakery in the early 1970s; and truck driver for CTI from 1972 to 1973.

In 1973, Manny moved to Cottonwood, Arizona and began working for Cottonwood Water Works, a private contractor hired by the City of Cottonwood, and began laying municipal water pipe for the city's water distribution.  Manny was on a three-man team that repaired broken pipes, laid new pipe, installed septic tanks and other "sandwich jobs" assigned by their employer. Manny was there for 10 years, ending in 1983.  Manny had to dig up broken pipe, some of which was asbestos-cement (a/c) pipe, some ductile iron.  He had to cut out the damaged portion, mill the ends to accept a replacement piece cut and mill the replacement piece.  He also laid new pipe for the growing city.  This required him to cut, mill, tap, file, rasp and handle the a/c pipe.  He was exposed to visible dust from a/c pipe on a daily basis.  In addition to water pipe, they used a/c

pipe to connect houses to new septic tanks they were installing.  The a/c pipe used on these jobs is attributable to at least one Defendant in this matter.

After Cottonwood Water Works, Mr. Encisco worked as a Welder in the Clarkdale, Arizona area until 1989, after which he worked various jobs for Arroyo Roble Clinic from 1990 to 1994, including work as a cook and bus driver.  Finally, from 1994 to 2000, Mr. Encisco worked as a mechanic for the City of Clarkdale, performing maintenance and electrical work on various City vehicles.

In his personal life, Mr. Encisco performed 2-3 brake jobs per year for most of his adult life, mostly with asbestos-containing brakes, for which Defendants are responsible.  He also performed a few personal home remodel jobs on his home and the homes of friends and family, ranging from the early 1970s to the mid-1980s.  Some of those jobs involved the use of asbestos-containing joint compound, for which Defendants are responsible.  He purchased the brakes and joint compound from local stores, including those for which Defendants are responsible.

Mr. Encisco was never warned about the asbestos-related hazards of the products he worked with despite the Defendants which are responsible for those products possessing actual or constructive knowledge of those hazards.

**B.  <u>Defendants Legal Defenses and the Bases Therefor</u>**:

Defendants deny Plaintiff has accurately summarized the facts of this case in Section I(A), above, and that, among other things, Plaintiff's summary of the facts is inconsistent with the deposition testimony previously given by Mr. Encisco.  Defendants each dispute that their products caused the injuries and damages alleged in Plaintiff's Complaint and that their products were defective.  Defendants each assert that any failure to warn was not a cause of the injuries and damages alleged in Plaintiff's Complaint.  Defendants also assert that the conduct, acts, omissions or negligence of third persons, including but not limited to Mr. Encisco's employers, intervened and superseded the negligence, responsibility or strict liability, if any, of each Defendant, in causing Mr. Encisco's alleged injuries.  Defendants cannot be liable to Plaintiff for an amount greater than that represented by the degree or percentage of fault, if any, attributable to each Defendant that

produced Plaintiff's claimed damages.  A.R.S. § 12-2501, *et seq.*  "The proximate cause of the incident giving rise to the action was a use or consumption of the product that was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable or was contrary to any express and adequate instructions or warnings appearing on or attached to the product or on its original container or wrapping, if the injured person knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings."  A.R.S. § 12-683(3).  Some defendants also assert that as bulk suppliers of raw materials to sophisticated users and/or sophisticated purchasers they cannot be liable to end-users of the sophisticated users' or purchasers' finished products and as bulk suppliers of raw materials to manufacturers of finished products they cannot be liable to end-users of the finished products.  Additional defenses are asserted in Defendants' answers to Plaintiff's Complaint and are incorporated herein.  Some Defendants allege that they cannot be held liable to Plaintiff for component parts incorporated into their equipment, or for thermal insulation or other asbestos-containing products applied to their equipment by others.  Some Defendants allege that they cannot be liable to Plaintiff as a matter of law under *Boyle v. United Technologies Corp.*  Some Defendants assert that their products only contained chrysotile asbestos and that chrysotile did not cause or contribute to Mr. Encisco's alleged mesothelioma, rather that Mr. Encisco's disease was caused by amphibole forms of asbestos.  Those Defendants against which successor liability claims have been asserted deny that successor liability exists and/or that those claims have been properly asserted.  Defendants assert that they cannot be held liable for damages to the extent that those for whom damages are sought have failed to mitigate damages and that such damages are not recoverable.  Defendants also assert the state-of-the-art defense.

**2.  <u>Elements Necessary to Prove Causes of Action and Affirmative Defenses:</u>**

**<u>Causes of Action</u>:**

**A.  <u>Negligence</u>**

In order to prove negligence, Plaintiff must prove that:

(1) Defendants owed Plaintiff's Decedent a duty of care;

(2) Defendants breached that duty by act or omission;

(3) The breach of that duty caused the injury complained of; and

(4) That Plaintiff was damaged.

Plaintiff must show that the defendant, by his act or omission, violated a duty incumbent upon them which has caused the injury complained of.  *The Nitro-Glycerine Case* (1872) 82 U.S. 524, 537.  The duty is violated by "the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do."  *Id.* at 536.

**B.  <u>Strict Product Liability</u>**

In order to prove that Defendants are liable under a theory of strict products liability, Plaintiff must prove that Defendants sold a product in a defective condition unreasonably dangerous to the user or consumer or to his property and that this product caused physical harm to the ultimate consumer or his property.  In order to prove this claim, Plaintiff must also prove that the Defendants were engaged in the business of selling such a product, and the product is expected to and does reach the consumer without substantial change in the condition in which it is sold.  Restatement (second) of Torts § 402A(1) (1965).  Liability lies with such a Defendant even if the Defendant has exercised all possible care in the preparation and sale of its product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.  *Id.* at § 402A(2).

**C.  <u>Gross Negligence</u>**

In order to prove Gross Negligence, Plaintiff must prove all elements of Negligence as outlined above and further prove that Defendant acted with a greater want of care than is implied by the term "ordinary negligence."  *Milwaukee & St. P.R. Co. v. Arms* (1875) 91 U.S. 489, 495.  "Gross negligence" has also been defined as "a callous indifference or a thoughtless disregard for the consequences of one's act or failure to act."  *Smith v. Wade* (1983) 461 U.S. 30.  A gross-negligence claim additionally requires a showing of "[g]ross, willful, or wanton

conduct." *Armenta v. City of Casa Grande*, 205 Ariz. 367, ¶ 20, 71 P.3d 359, 364 (App. 2003), *quoting Williams v. Thude*, 180 Ariz. 531, 539, 885 P.2d 1096, 1104 (App. 1994).

## D. <u>Negligence Per Se</u>

In order to prove Negligence Per Se, Plaintiff must prove all elements of Negligence as outlined above.  However, as to the second element of Negligence, the "breach" of a duty owed to Plaintiff by either act or omission, the jury need not consider whether the defendant's actions were reasonable or not. The defendant's actions are assumed to be unreasonable if the conduct violates an applicable rule, regulation, or statute.  The Plaintiff must still prove that the conduct violated the statute or rule and caused the accident, but the standard of care is assumed.

As to Statutory Violations, an actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident is within the class of person the statute is designed to protect.  Restatement (3d) on Torts: Liability for Physical Harm, § 14 Statutory Violations as Negligence Per Se (2010).

## E. <u>Conspiracy; Aiding and Abetting</u>

Conspiracy and Aiding and Abetting can be analyzed together under the Restatement (2d) of Torts § 876 (1979).

In order to prove conspiracy, Plaintiff must prove that the Defendant acted in concert with another or pursuant to a common design with another to do a tortious act resulting in harm to Plaintiff.  Restatement (2d) of Torts § 876(a) (1979).  *See also* Comments on § 876(a) [which sets forth that the "acting in concert" and "common design" rules are often called "conspiracy"]. Arizona defines conspiracy as "two or more people agree to accomplish an unlawful purpose, or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002) (en banc) (quoting *Baker v. Stewart Title & Trust of Phx.*, 197 Ariz. 535, 542, 5 P.3d 249, 256 (Ct. App. 2000)).

Aiding and abetting liability rests on three elements: (1) the primary tortfeasor must commit a tort that injures the plaintiff; (2) the defendant must know that the primary tortfeasor's

conduct breached a duty owed by the primary tortfeasor to the plaintiff; and (3) the defendant must substantially assist or encourage the primary tortfeasor's wrongful conduct.  Restatement (2d) of Torts § 876(b) (1979).

### F.  Loss of Consortium

As an initial matter, loss of consortium is a derivative claim and an element of damages, as opposed to an independent cause of action.  In other words, first Plaintiff must establish liability for one of the underlying torts alleged prior to a loss of consortium analysis.  Assuming Plaintiff establishes liability for an underlying tort, Loss of Consortium, sometimes known as "loss of society," can be proven with evidence that Plaintiff has been deprived of the benefits of her family relationship with the Decedent due to injuries caused by the tortfeasor.

### Affirmative Defenses:

### A.  State of the Art

A defendant must prove that the plans or designs for the product or the methods and techniques of manufacturing, inspecting, testing, and labeling the product conformed with the state of the art at the time the product was first sold by the defendant. "State of the art" means the technical, mechanical, and scientific knowledge of manufacturing, designing, testing, or labeling the same or similar products that was in existence and reasonably feasible for use at the time of manufacture. Revised Arizona Jury Instruction (Civil) 5th, Product Liability 7; A.R.S. § 12-683(1); A.R.S. § 12-681(6); *Golonka v. General Motors*, 204 Ariz. 575, 593, 65 P.3d 956, 974 (2003).

### B.  Alteration/Modification of Product

A defendant must prove:

1.      A third party or parties altered or modified the product after the product was manufactured or sold by the defendant;

2.      The alteration or modification was not reasonably foreseeable; and

3.      The alteration or modification of the product was a cause of Mr. Encisco's injuries.

Revised Arizona Jury Instruction (Civil) 5th, Product Liability 8; A.R.S. § 12-683(2).

**C.  Misuse of Product**

A defendant must prove:

1.      The product was used for a purpose, in a manner or in an activity which was not reasonably foreseeable or contrary to any express and adequate instructions and/or warnings appearing on or attached to the product, or on its original container or wrapping, and Mr. Encisco knew, or with the exercise of reasonable and diligent care should have known, of the warnings and/or instructions; and

2. Such use of the product was a cause of Mr. Encisco's injury.

Revised Arizona Jury Instruction (Civil) 5th, Product Liability 9; A.R.S. § 12-683(3); *Jimenez v. Sears Roebuck & Co.*, 183 Ariz. 399, 904 P.2d 861 (1995).

**D.  Knowledgeable/Sophisticated Users**

A defendant must prove that Emmanuel Encisco and/or his employer(s) were knowledgeable and sophisticated users of asbestos and asbestos-related products, and that the defendant provided complete, accurate, and appropriate warnings about the product. *See Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19, 24, 365 P.3d 944, 949 (2016).

**E.  Apportionment of Fault to Non-Parties**

The fault of designated non-parties will be based on the same legal theories asserted by Plaintiff in her Complaint, including on the following legal theories:  negligence, strict product liability, including failure to warn, and negligence per se.  Plaintiff has listed the elements for these above.

**F.  Mitigation of Damages / Avoidable Consequences**

To prove the defense of failure to mitigate damages or (avoidable consequences), a defendant must prove (1) that plaintiff, Emmanuel Encisco, did not make reasonable efforts to prevent or reduce damages; (2) if plaintiff had acted reasonably, he could have prevented or reduced damages; and (3) the amount of plaintiff's damages that could have been prevented or reduced through reasonable efforts. Revised Arizona Jury Instructions (Civil) 5th Contracts No. 23.

3. **Issues in Dispute:**

   A. **Plaintiffs' Position:**

   Plaintiff anticipates that Defendants will dispute whether and to what extent Mr. Enciso was exposed to their asbestos-containing products.  Plaintiff further anticipates that Defendants will dispute that Mr. Enciso's exposure to asbestos, either via their respective products or as a whole, caused his mesothelioma.  Finally, Plaintiff anticipates that Defendants will dispute the nature and extent of Plaintiff's damages.

   B. **Defendants' Position:**

   Some defendants anticipate that Plaintiff may dispute that chrysotile asbestos does not cause mesothelioma.  Some defendants will allege that it was Mr. Enciso's exposure to pipe insulation and other amphibole containing products in the U.S. Navy and at other locations that was the sole cause of his mesothelioma.  Some defendants will argue that they cannot be held liable to Plaintiff for third-party products allegedly used in connection with their equipment.  It is anticipated that Plaintiff will contend that Mr. Enciso was exposed to each Defendants products or materials and each Defendant will dispute that.  It is not yet known whether Defendants will dispute Mr. Enciso's mesothelioma diagnosis, as Defendants have not yet had the opportunity to examine Mr. Enciso's pathology materials and complete medical records.

4. **Jurisdiction:**

   Plaintiffs filed this action the Arizona Superior Court for Coconino County.  Defendant Parker-Hannifin Corporation removed the action from the Superior Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and Local Rule 3.6.  This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(2) founded on diversity of citizenship.

   There are no parties who have not been served or who have not yet entered in appearance.

   All parties are subject to the Court's jurisdiction. Plaintiff is a citizen of the State of Arizona.

   Defendant **3M COMPANY** (f/k/a MINNESOTA MINING AND MANUFACTURING) is a Delaware corporation registered to do business in Arizona, and has its principal place of

business at 3M Center Income Tax 224-5N-40, Building 224-5N-40, St. Paul, Minnesota 55144-1000.

Defendant **ACE HARDWARE CORPORATION** is a Delaware corporation registered to do business in Arizona, and has its principal place of business at 2200 Kensington Court, Oak Brook, Illinois 60523.

Defendant **AUTOZONE, INC.** *f/k/a* AUTO SHACK INC. is a Nevada corporation registered to do business in Arizona, and has its principal place of business at 3030 Poplar Avenue, Memphis, Tennessee 38111.

Defendant **CERTAINTEED CORPORATION** is a Delaware corporation registered to do business in Arizona, and has its principal place of business at 20 Moores Road, Malvern, Pennsylvania 19355.

Defendant **GENUINE PARTS COMPANY** (*sued individually and as successor-in-interest to* NATIONAL AUTOMOTIVE PARTS ASSOCIATION *a/k/a* NAPA) is a Georgia corporation registered to do business in Arizona, and has its principal place of business at 2999 Wildwood Parkway, Atlanta, Georgia 30339.

Defendant **HONEYWELL INTERNATIONAL INC**. (sued individually and as successor-in-interest to ALLIEDSIGNAL, INC. successor to BENDIX CORPORATION) is a Delaware corporation registered to do business in Arizona, and has its principal place of business at 115 Tabor Road, Morris Plains, New Jersey 07950.

Defendant **INGERSOLL-RAND COMPANY** is a New Jersey corporation registered to do business in Arizona, and has its principal place of business at 800-E Beaty Street, Davidson, North Carolina 20836.

Defendant **PARKER-HANNIFIN CORPORATION** (*sued individually and as successor-in-interest to* SACOMO-SIERRA, INC.) is an Ohio corporation registered to do business in Arizona, and has its principal place of business at 6035 Parkland Blvd, Cleveland, Ohio 44124.

Defendant **PROBUILD HOLDINGS LLC** (*sued individually and as successor-in-interest to* LANOGA CORPORATION, *successor-in-interest to* BABBITT BROTHERS TRADING COMPANY) is a Delaware corporation and has its principal place of business at 2001 Bryan Street, Suite 1600, Dallas, Texas 75234.

Defendant **UNION CARBIDE CORPORATION** is a New York corporation registered to do business in Arizona, and has its principal place of business at 2030 Dow Center Midland, Michigan 48674.

5. **Parties Not Served or Who Have Not Appeared**

Not Applicable.

6. **Names of Parties Not Subject to the Court's Jurisdiction**

Not Applicable.

7. **Dispositive or Partially Dispositive Issues:**

The parties anticipate that there will be Motions for Summary Judgment/Summary Adjudication, as well as Motions seeking to exclude or limit expert testimony.

8. **Whether Case is Suitable for Assignment to Magistrate or Special Master:**

The parties agree that the case need not be assigned to a Magistrate or Special Master.

9. **Related Cases:**

There are no related cases pending before other judges of this Court or before other courts.

10. **Outstanding Issues With Mandatory Initial Discovery Responses:**

At this time, there are no outstanding issues with respect to mandatory initial discovery responses.

11. **Proposed Deadlines:**

(a)   filing motions to amend the Complaint or to join additional parties; **December 14, 2018**

(b)   if a patent case, exchange of patent claim constructions and filing of claim construction opening brief, response, and reply; **N/A**

(c)   completion of all fact discovery; **June 28, 2019**

(d)   disclosure of expert testimony by Plaintiff(s) under Fed. R. Civ. P.

26(a)(2); **July 5, 2019**

(e)   disclosure of expert testimony by Defendant(s) under Fed. R. Civ. P. 26(a)(2); **August 23, 2019**

(f)   disclosure of rebuttal expert testimony; **September 20, 2019**

(g)   disclosure of all witnesses, exhibits and other matters under Fed. R. Civ. P. 26(a)(3); **October 25, 2019**; and Plaintiff disclosure of all fact witnesses; **January 4, 2019**

(h)   closure of all discovery; **November 29, 2019**

(i)   completing good faith discussions of settlement **December 13, 2019**

(j)   filing dispositive motions, **including *Daubert* motions**; **January 31, 2020**

(k)   Plaintiff shall disclose the following information as required by ARS § 12-782(B): (a) For each personal injury claim that the plaintiff has filed against an asbestos trust, a copy of the final executed proof of claim, all trust documents, including trust claims materials, trust governance documents, any documents reflecting the current status of the claim and, if the claim is settled, all documents relating to the settlement of the claim; and (b) A list of each personal injury claim that the plaintiff reasonably anticipates filing against an asbestos trust, including the name, address, and contact information for the asbestos trust and the amount that the plaintiff anticipates claiming against the asbestos trust; **November 30, 2018**; Plaintiffs shall also supplement such disclosure within ten (10) days of any future claim submission to an asbestos bankruptcy trust; As allowed by ARS § 12-782(H), Defendants may file a motion to identify an asbestos trust not named by the Plaintiff by **June 28, 2019**.

(l)   disclosure of Defendants' Non-party at Fault Designations; **July 26, 2019**.

12.   The scope of discovery, including any suggested changes in the limitations on discovery imposed by the Federal Rules of Civil Procedure, and whether discovery should be conducted in phases or should be limited to or focused upon particular issues. For example, where dispositive motions will be filed (*e.g.,* motions for summary judgment on a statute of limitations defense), counsel should consider limiting discovery to the issue at hand until the Court has ruled on the motion;

The scope of discovery does not require any limitations, nor should it be conducted in phases or limited to particular issues.

13.   Estimated length of trial, and any suggestions for shortening the trial;

At this time, the parties estimate that the trial will last for 21 days.  Depending on the course of this litigation, and any rulings made by the Court, the parties may subsequently have suggestions for the Court to shorten the trial.  The parties will bring any suggestions to Court at that time.

14.   Whether a jury trial has been requested and whether the request for a jury trial is contested. If the request for a jury trial is contested, the Proposed Case Management Plan shall set forth the reasons that a trial by jury is in dispute;

A jury trial has been requested and no party contests that request.

15.    The prospects for settlement, including any request to have a settlement conference before another United States District Judge or a Magistrate Judge, or any other request of the Court for assistance in settlement efforts;

No prospects for settlement exist at this time.  However, the parties agree that continued dialogue about settlement amongst counsel during the pendency of the matter is important and the parties agree to have informal discussions regarding settlement throughout the progression of the case.  In addition, the parties welcome input before another United States District Judge or a Magistrate Judge in any fashion in attempts to settle the case.

///

///

16.    In class actions, the proposed dates for class certification proceedings and other class management issues. Such certification will result in the case being reassigned to the complex track for case management purposes (*see* LRCiv 16.2);

Not applicable.

17.    Whether any unusual, difficult, or complex problems or issues exist that require this case to be placed on the complex track for case management purposes (*see* LRCiv 16.2); and

None.

18.    Any other matters that counsel believe will aid the Court in resolving this case in a just, speedy, and inexpensive manner. However, the parties may not opt out of compliance with the provisions of General Order 17-08.

None at this time.

**IT IS FURTHER ORDERED:**

Date:_____          _____

Honorable John J. Tuchi
Judge of the United States District Court
District of Arizona

**CONSENTED AND APPROVED**

Dated this 19th day of November, 2018.          WATERS, KRAUS & PAUL

By: ___*/s/ Rajeev K. Mittal*_____
Rajeev K. Mittal
222 N. Pacific Coast Highway, Suite 1900
El Segundo, CA 90245

Burt Rosenblatt, Esq.
ELY, BETTINI, ULMAN & ROSENBLATT
3200 N. Central Avenue, Suite 1930
Phoenix, Arizona 85012

*Attorneys for Plaintiffs*

1   Dated this 19th day of November, 2018.                    WELLS, ANDERSON & RACE, LLC

2                                                       By:   /s/ L. Michael Brooks, Jr.

3                                                              Mary A. Wells
                                                              L. Michael Brooks, Jr.
4
                                                              1700 Broadway, Suite 1020
5                                                             Denver, CO 80290

6                                                             Steven M. Aaron
7                                                             DENTONS US LP
                                                              2398 East Camelback Road, Suite 850
8                                                             Phoenix, AZ 85016

9                                                             Jayme C. Long
                                                              Denisse Lopez Campa
10                                                            601 South Figueroa Street, Suite 2500
11                                                            Los Angeles, CA 90017

12                                                            *Attorneys for 3M Company*

13

14   Dated this 19th day of November, 2018.                    THE BREBNER LAW FIRM, P.C.

15                                                       By:   /s/ Bartlet A. Brebner
16                                                            Bartlet A. Brebner
                                                              4647 North 32nd Street, Suite 285
17                                                            Phoenix, AZ 85018

18                                                            *Attorneys for Ace Hardware Corporation*
19

20
     Dated this 19th day of November, 2018.                    RESNICK & LOUIS, P.C.
21
                                                        By:   /s/ Carol M. Romano
22                                                           Carol M. Romano
                                                              8111 E. Indian Bend Rd.
23                                                            Scottsdale, AZ 85250
24
                                                              *Attorneys for Autozone, Inc.*
25

26

27

28
     4839-6145-2416.1                      16
                              JOINT [PROPOSED] CASE MANAGEMENT PLAN

Dated this 19th day of November, 2018.

THE MAEROWITZ LAW FIRM

By:  _/s/ Joseph Greenslade_

Kim R. Maerowitz
Joseph Greenslade
15300 N. 90th Street, Suite 200
Scottsdale, AZ 85260

*Attorneys for CertainTeed Corporation*

Dated this 19th day of November, 2018.

THE CAVANAGH LAW FIRM

By:  _/s/ Richard W. Mear_

Richard W. Mear
Karen N. Wohlgemuth
1850 North Central Avenue, Suite 2400
Phoenix, AZ 85004

*Attorneys for Genuine Parts Company and
Probuild Holdings LLC*

Dated this 19th day of November, 2018.

MEAGHER & GEER, P.L.L.P.

By:  _/s/ John C. Hendricks_

John C. Hendricks
Kathleen L. Beiermeister
8800 N. Gainey Center Drive, Suite 261
Scottsdale, AZ 85258

*Attorneys for Ingersoll-Rand Company*

Dated this 19th day of November, 2018.

SNELL & WILMER LLP

By:  _/s/ Kelly L. Wilkins_

Kelly L. Wilkins
One Arizona Center
400 E. Van Buren St.
Phoenix, AZ 85004

*Attorneys for Parker-Hannifin Corporation*

Dated this 19th day of November, 2018..

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:   _/s/ Ronald L. Hellbusch_
Shawn M. Petri
Ronald L. Hellbusch
2929 North Central Avenue
Phoenix Plaza Tower II, Suite 1700

*Attorneys for Union Carbide Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which caused the parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

By:   _/s/ Rajeev K. Mittal_
Rajeev K. Mittal

# SERVICE LIST

**3M COMPANY** *f/k/a* MINNESOTA MINING AND MANUFACTURING, a Delaware Corporation with its principal place of business in the State of Minnesota
Steven M. Aaron
DENTONS US LP
2398 East Camelback Road, Suite 850
Phoenix, AZ 85016


Jayme C. Long
Denisse Lopez Campa
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
jayme.long@dentons.com
denisse.lopezc@dentons.com

Mary A. Wells
L. Michael Brooks, Jr.
WELLS, ANDERSON & RACE, LLC
1700 Broadway, Suite 1020
Denver, CO 80290
mwells@warllc.com
mbrooks@warllc.com


**ACE HARDWARE CORPORATION**, a Delaware Corporation with its principal place of business in the State of Illinois
Bartlet A. Brebner
THE BREBNER LAW FIRM, P.C.
4647 North 32nd Street, Suite 285
Phoenix, AZ 85018
bbrebner@brebnerlaw.com


**AUTOZONE, INC**. *f/k/a* AUTO SHACK INC., a Nevada Corporation with its principal place of business in the State of Tennessee
Carol M. Romano
RESNICK & LOUIS, P.C.
8111 E. Indian Bend Rd.
Scottsdale, AZ 85250
cromano@rlattorneys.com


**CERTAINTEED CORPORATION**, a Delaware Corporation with its principal place of business in the State of Pennsylvania
Kim R. Maerowitz
THE MAEROWITZ LAW FIRM
15300 N. 90th Street, Suite 200
Scottsdale, AZ 85260
kmaerowitz@maerowitzlaw.com


**GENUINE PARTS COMPANY** (*sued individually and as successor-in-interest to* NATIONAL AUTOMOTIVE PARTS ASSOCIATION *a/k/a* NAPA), a Georgia Corporation with its principal place of business in the State of Georgia
Richard W. Mear
Karen N. Wohlgemuth
THE CAVANAGH LAW FIRM
1850 North Central Avenue, Suite 2400
Phoenix, AZ 85004
rmear@cavanaghlaw.com
kwohlgemuth@cavanghlaw.com


**INGERSOLL-RAND COMPANY**, a New Jersey Corporation with its principal place of business in the State of North Carolina
John C. Hendricks
Kathleen L. Beiermeister
MEAGHER & GEER, P.L.L.P.
8800 N. Gainey Center Drive, Suite 261
Scottsdale, AZ 85258
jhendricks@meagher.com
kbeiermeister@meagher.com


**PARKER-HANNIFIN CORPORATION** (*sued individually and as successor-in-interest to* SACOMO-SIERRA, INC.) an Ohio Corporation with its principal place of business in the State of Ohio
Kelly L. Wilkins
SNELL & WILMER LLP
One Arizona Center
400 E. Van Buren St.
Phoenix, AZ 85004
kwilkins@swlaw.com
docket@swlaw.com
khommel@swlaw.com


**PROBUILD HOLDINGS LLC**, (*sued individually and as successor-in-interest to* LANOGA CORPORATION, *successor-in-interest to* BABBITT BROTHERS TRADING COMPANY), a Delaware Corporation with its principal place of business in the State of Texas
Richard W. Mear
Karen N. Wohlgemuth
THE CAVANAGH LAW FIRM
1850 North Central Avenue, Suite 2400
Phoenix, AZ 85004
rmear@cavanaghlaw.com
kwohlgemuth@cavanghlaw.com

# SERVICE LIST

**UNION CARBIDE CORPORATION**, a New York
Corporation with its principal place of business in the State
of Texas
Ronald L. Hellbusch
Shawn M. Petri
LEWIS BRISBOIS BISGAARD & SMITH LLP
2929 North Central Avenue
Phoenix Plaza Tower II, Suite 1700
Phoenix, AZ 85012
Ronald.Hellbusch@lewisbrisbois.com
Shawn.Petri@lewisbrisbois.com

JOINT [PROPOSED] CASE MANAGEMENT PLAN